NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEW JERSEY REGIONAL COUNCIL OF CARPENTERS and LOCAL UNION 2018, | **Hon. Dennis M. Cavanaugh** |
| Petitioners, | **OPINION** |
| v. | Civil Action No. 09-CV-3819 (DMC) |
| FIXTURE PERFECT, INC. d/b/a DAVACO, INC. a/k/a DAVACO OF NEW JERSEY, INC., | |
| Respondent. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by New Jersey Regional Council of Carpenters ("Petitioner" or "Council") to confirm the arbitration Award and Order issued on May 22, 2009 by Arbitrator J.J. Pierson, Esq. ("Arbitrator Pierson"), and by way of cross-motion by Fixture Perfect, Inc. d/b/a Davaco, Inc. a/k/a Davaco of New Jersey, Inc. ("Respondent" or "Davaco") to vacate that Award and Order. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of all parties, and based upon the following, it is the conclusion of this Court that the decision of Arbitrator Pierson is **affirmed**.

**I.   BACKGROUND**

On May 14, 2009, an arbitral hearing was conducted before Arbitrator Pierson in the Union Office, Edison, New Jersey, and Notice of Arbitration Hearing was forwarded to each party by Arbitrator Pierson. Pursuant to Arbitrator Pierson's Opinion and Award, jurisdiction over the

grievance was derived pursuant to the "Short Form Agreement," dated March 17, 1992, executed between Council and Fixture Perfect, Inc. That agreement explicitly incorporates by reference the collective bargaining agreement ("CBA") between the Council and the Building Contractors Association of New Jersey, effective May 1, 2007 through April 30, 2012, as well as the Declarations of Trust of the New Jersey Carpenters Fund. In accordance with the Short Form Agreement, Local Union 2018 ("Petitioner" or "Local 2018") of the United Brotherhood of Carpenters & Joiners of America filed a grievance against Davaco.

Pursuant to the Short Form Agreement, Fixture Perfect, Inc. and the New Jersey State Council "agree[d] to be bound by ever current collective bargaining agreements between the Local Unions or District Councils and Building Contractors Association of New Jersey, governing wages, working conditions and payments to fringe benefit funds which agreement is incorporated herein by reference." Further,

> [t]he Agreements and Declarations of Trust, as amended, governing the above mentioned fringe benefit funds are agreed to by the parties and incorporated herein by reference. This Agreement shall continue in effect for the duration of the above referred to Agreement and shall be deemed reviewed on the same basis as the above referred Agreement is renewed by renegotiations or otherwise, including more than one renewal unless at least 90 days before termination of the then current collective bargaining agreement, either party notifies the other in writing of cancellation of the Agreement. This Agreement shall also govern any corporation, partnership or sole proprietorship which is deemed to be a controlled entity under the Internal Revenue Code.

Article XVIII of the CBA provides, "[a]ll questions or grievances involving the interpretation or application of this Agreement, other than trade jurisdictional disputes arising under Articles IX and X and the establishment of wages rates shall be handled under the following procedures:"

> Step I:   Between the company representatives and the business representative at the job site as soon as practicable but in no event later than three

                    (3) days after the occurrence of the dispute. Failure to raise any dispute within three (3) working days of its notification, renders the dispute null and void.

Step II:      If not resolved pursuant to Step I, then between the Manager of the Region where the job is located, or a designee, and a company officer at the job site. This meeting should be arranged as soon as practicable but in no event later than three (3) days after the conclusion of [S]tep I.

Step III:     If not resolved pursuant to Step II, then between the Executive Secretary/Treasurer of the Regional Council, or a designee, and a company officer at the job site. This meeting should be arranged as soon as practicable but in no event later than three (3) days after the conclusion of Step II.

Step IV:     If the parties are unable to affect an amicable settlement or adjustment of any grievance or controversy, such grievance or controversy shall be submitted to binding arbitration under the Expedited Rules of the American Arbitration Association at the request of either party provided notice in writing of intent to do so is given through [sic] the other party and the American Arbitration Association within thirty-five (35) working days after Step III has been completed. One of the following three arbitrators (J.J. Pierson, Wellington Davis or Steven M. Wolf) shall be selected who shall hear the matter and his decision will be final and binding on the Contract and to the Union and all Employers.

In accordance with the foregoing procedure, by way of letter, dated January 23, 2009, notice was advanced to the attention of Rick Davis, Fixture Perfect Installation, Inc.a/ka Davaco Retail Services, Inc. at 6688 North Central Expressway, Suite 100, Dallas, TX 75206-3927, identifying alleged violations in accordance with the CBA and requesting a meeting. In the absence of a response, by way of letter, dated January 28, 2009, the same recipient was informed that Step I had been completed and that the Council was proceeding with Step II. Further, in the absence of a response, by way of letter, dated February 2, 2009, notice was advanced to the same recipient that Step II of the Grievance and Arbitration Procedure had been completed, that Council was now

proceeding to Step III and finally, that the Council reserved the right to proceed to arbitration.

At the arbitration hearing, no appearance was entered on behalf of Fixture Perfect, Inc. d/b/a Davaco, Inc. Arbitrator Pierson framed the issue as "[w]hether Fixture Perfect, Inc., dba Davaco violated the Collective Bargaining Agreement by evading its terms and conditions and/or by failing to pay contractual wages and benefits for work performed on the 'Home Depot' (Toms River, New Jersey) project? If so, what shall be the remedy?" The underlying facts presented to Arbitrator Pierson concerned allegations that Davaco failed to hire Carpenters (covered by the Agreement) to remove carpet and install cabinets in the Home Depot building, and instead, performed the work with non-union carpenters wearing Davaco shirts. Council presented argument that this misconduct constituted violations of Article I (Recognition), Article XXIV (Payment of Wages & Fringes) and Article XXXI (Fringe Benefit Funds of the Agreement).[1] At the conclusion of the hearing, Arbitrator Pierson entered an Award and Order in favor Petitioner.

---

[1] Arbitrator Pierson entered the following Award and Order:
1. The signatory Employer, Fixture Perfect, Inc., dba Davaco, violated the Short Form Agreement and the BCA Collective Bargaining Agreement with the NJ Regional Council of Carpenters and Local Union 2018 on the "Home Depot" project, specifically by evading its contractual obligation to employ member-Carpenters and by failing to pay contractual wages and benefits for work performed.
2. Fixture Perfect, Inc., dba Davaco, is liable to the Council and the Funds int eh amount of $9,502.80 for lost work opportunities and lost wages and benefit contributions for work performed on the Mt. Blanc project in January 2009, as a result of Fixture Perfect, Inc. dba Davaco violation of the Agreement.
3. In addition to the above remedy, the Trustees of the Funds, in their discretion, may cause an audit to be made of the payrolls and such other records of Fixture Perfect, Inc. Dba Davaco as are considered pertinent by the Trustees from July 1, 2008 through the present date and Fixture Perfect, Inc. dba Davaco shall immediately cooperate in the performance of an audit. The Funds may commence the audity within 30 days from the date of this Award.
4. In accordance with Article XVIII of the Agreement, Fixture Perfect, Inc., dba Davaco shall reimburse the Council for the Arbitrator's fee, in the amount of $1,250.00. Payment of the Arbitrator's fee by Fixture Perfect, Inc. dba Davaco shall be deemed an obligation imposed by this Award.
5. The Arbitrator shall retain jurisdiction of this matter in the event of any dispute of any issue relating to or arising from the interpretation or application of this Order.

## II. STANDARD OF REVIEW

The court's standard of review of a labor arbitration award is narrow. <u>Major League Umpires Ass'n v. American League of Professional Baseball Clubs</u>, 357 F.3d 272 (3d Cir. 2002). Under the Federal Arbitration Act, a court may vacate an arbitration award if the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). A court's role in reviewing an arbitration award is not to correct factual or legal errors made by an arbitrator. <u>Major League Umpires Ass'n,</u> 357 F.3d at 279. The court is limited to assessing "whether the award draw[s] its essence from the collective bargaining agreement[,]" and may only vacate an arbitrator's award if it is entirely unsupported by the record or if it reflects a manifest disregard of the agreement. <u>Exxon Shipping Co. v. Exxon Seamen's Union</u>, 73 F. 3d 1287, 1291 (3d Cir 1996). Subject only to a standard of minimal rationality, an arbitrator's decision requires neither wisdom nor internal consistency. <u>Id</u>. The court must determine whether the arbitrator manifestly disregarded the terms of the agreement in making the arbitration award.

## III. DISCUSSION

### A. Arbitrable

Citing <u>United Atkinson v. Sinclair</u>, 370 U.S. 238 (1962), Respondent contends that whether the issue presented to Arbitrator Pierson for review is subject to arbitration falls under the purview of this Court, rather than the arbitrator. By contrast, Petitioner contends that the case law relied upon by Respondent is outdated and further, advances the argument that the "Third Circuit has expressly adopted the reasoning of <u>Buckeye Check Cashing, Inc. v. Cardegna</u> in holding that challenges to arbitration awards on the grounds that a collective bargaining agreement had terminated or expired

5

were expressly for arbitrators to decide, not the courts." New Jersey Building Larborers Fund v. American Coring and Supply, 2009 U.S. App. LEXIS 16649 (3d Cir. July 27, 2009).

"[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 446 (2006). "[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." Id. "[R]egardless of whether the challenge is brought in federal or state court, a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Id. at 449. However, "the district court and not the arbitration panel must decide the question of arbitrability-- that is, the question whether a certain dispute is subject to arbitration under the terms of a given agreement--unless the parties clearly and unmistakably have agreed that the arbitrator should decide arbitrability." China Minmetals Materials Imp. & Exp. Co. Ltd. v. Chi Mei Corp., 334 F.3d 274, 281 (3d Cir. 2006) (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)); see Certain Underwriter at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580, 585 (3d Cir. 2007). "Matters that concern 'neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties' will *not* fall within this 'narrow exception.'" Certain, 489 F.3d at 586. "Because of the strong federal policy in favor of arbitration, however, 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Nursing Home & Hospital Union No. 434 v. Sky Vue Terrace, Inc., 759 F.2d 1094, 1097 (3d Cir. 1985)(citing United Steelworkers of America v. Warrior Gulf & Navigation Co., 363 U.S. 574, 582-83 (1960)).

The issue presented concerns alleged violations of the provisions of the CBA. Pursuant to the

CBA and the Short Form Agreement, matters concerning the interpretation of the CBA are subject to arbitration. Therefore, the Court concludes that issue presented to Arbitrator Pierson was properly within the purview of Arbitrator Pierson's authority.

Further, "[u]nlike a challenge to an arbitration provision, a dispute invoking the termination clause of an agreement is an attack on the agreement itself." New Jersey Building Laborers Statewide Benefits Fund v. American Coring & Supply, 2009 U.S. App. LEXIS 16649, *10 (3d Cir. July 27, 2009); see Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 45 (3d Cir. 1978). Therefore, to the extent that Respondent alleges that Davaco, Inc. is not subject to successor liability because the CBA terminated with respect to Fixture Perfect, Inc. upon dissolution, that issue fell within the purview of the foregoing arbitral proceeding.

B.   Contractual Relationship

Respondent asserts that Davaco, Inc. never entered into a contractual relationship with Petitioner and therefore, Davaco, Inc. cannot be compelled to submit to arbitration. In support of this contention, Respondent submits an affidavit by Tom Smith, Esq., General Counsel of Davaco, Inc. representing the following:

1. Fixture Perfect, Inc., the only party that entered into the Short Form Agreement (or any agreement) with the Union, did so in March of 1992;

2. Fixture Perfect, Inc. became dormant on or about December 23, 1996;

3. Fixture Perfect, Inc. was officially dissolved by the Secretary of State in Texas on or about December 31, 2004;

4. Fixture Perfect, Ind. did not engage in any business operations or participate in any way in any Union related matters an [sic] or after its becoming dormant in 1996;

5. There is not now and never has been any entity named Davaco of New Jersey,

>    Inc. or Davaco Retail Services, Inc.; and
>
> 6.   Davaco, Inc. has never entered into any short form, long form, or any other contract or relationship with the Union.
>
> 7.   Davaco, Inc. is not, and never has been an alter ego, successor or joint employer with Fixture Perfect, Inc.

As a consequence, Respondent alleges that the arbitrator neither had jurisdiction over nor the authority to issue an award against Davaco, Inc. Further, Respondent presents the Court with a Certificate of Dissolution, dated December 31, 2004, by the Secretary of State of Texas.

In a supplementary affidavit, Tom Smith, Esq. clarifies and amends the foregoing in asserting that on April 6, 2007, a certificate of authority was filed with the New Jersey Secretary of State, authorizing Davaco, Inc. to do business in the State of New Jersey as "Davaco of New Jersey, Inc." Nonetheless, Mr. Smith indicates that neither Davaco entity ever entered into a contractual agreement with the New Jersey Regional Council of Carpenters or any other New Jersey Carpenters Union. Moreover, Mr. Smith alleges that during its existence from 1992-2004, Fixture Perfect, Inc. was an entirely separate entity from Fixture Perfect International, Inc. Lastly, Mr. Smith purports that service was defective and that notice was not rendered because service affected upon Fixture Perfect Installation, Inc. did not constitute service upon Fixture Perfect, Inc.; also, Respondent asserts that service affected upon Davaco Retail Services is ineffective because that is merely a tradename and not a corporate entity subject to service of process.

By contrast, Petitioner presents the Court with evidence that Respondent represents itself as other than Davaco, Inc. and has merely undergone a cosmetic name change from Fixture Perfect, Inc. to Davaco, Inc.  Petitioner submits a copy of the New Jersey State Business Gateway Service identifying a business entity called Davaco of New Jersey, with a registered agent in Cherry Hill, New

8

Jersey, a main business address of 6688 N. Central Expressway, Suite 1400, Dallas, Texas, CEO Richard Davis, President Gerald Geddis and an additional agent identified as J. Lamar Roberts. Petitioner also submits copies of letters advanced to CEO Davis in accordance with the grievance notification procedures articulated in the CBA. Finally, Petitioner submits a copy of website pages for Davaco, Inc. also calling itself Davaco Retail Services and Retail Services - Davaco, Inc. CEO Davis' photograph is on the website with a hyperlink to an interview conducted with the CEO. Further, although the individual suite identified on the website is 100 rather than 1400, the website's office address is the same. Tellingly, one web page touts "Fixture Perfect International Transitions Name to Davaco" and identifies this transition as a change in corporate identity.

"[I]n the context of arbitration, service of process rules must be enforced more liberally." Canada Life Ins. Co. v. Converium Ruckversicherung, 2007 U.S. Dist. LEXIS 42890, *14-15 (D.N.J. June 13, 2007) (citing Intercarbon Bermuda, Ltd v. Caltex Trading & Transp. Corp., 1993 U.S. Dist. LEXIS 301, *71 (S.D.N.Y. Jan. 12, 1993)). "[I]mperfect service of process in an arbitration case may not be fatal where jurisdiction over the arbitration is clear and where notice is sufficient to apprise the opposing party of the action being taken." Id. In the instant matter, jurisdiction over the substantive issue is clear pursuant to the CBA and the notice extended was sufficient to apprise Davaco of the ensuing arbitral proceedings. Therefore, the Court will not vacate the award on the ground that notice was defective.

"Generally, issues of successor and alter ego liability are matters of state law." In re G-I Holdings, 2008 U.S. Dist. LEXIS 43218, *44 (D.N.J. May 30, 2008)[2]. The existence of an alter ego

---

[2] In the absence of precedent concerning corporate law issues, New Jersey courts look to Delaware for guidance. Balsamides v. Protameen Chems., 160 N.J. 352, 372-73 (1999).

generally concerns whether the "independence of the separate entities was disregarded." Fisher v. Teva, 2006 U.S. App. LEXIS 31741, *10 (3d Cir. Dec. 22, 2006) (citing Lucas v. Gulf & Western Indus. Inc., 666 F.2d 800, 806 (3d Cir. 1981)); MBIA Ins. Corp. v. Royal Indem. Co., 426 F.3d 204, 213 (3d Cir. 2005) (SFC Financial I, LLC, was an alter ego of SFC separated only by corporate formalities. . .); see Pfundstein v.Omnicom Group, Inc., 285 N.J. Super 245, 253 (App. Div. 1995)[3]; see also In re Owens Corning, 419 F.3d 195, 207 (3d Cir. 2005) (the net-negative practical effects of attempting to thread back the tangled affairs of entities, separate in name only, with "interrelationships . . . hopelessly obscured."). In certain instances, trade names may be considered alter egos. Hee Soo Pyun v. Chesnovitz, 2007 N.J. Super. Unpub. LEXIS 2153, *8 (App. Div. 2007) (citing American Bankers Ins. Co. v. Stack, 208 N.J. Super. 75 (Law. Div. 1984)).

With respect to the traditional rule of corporate-successor non-liability, New Jersey courts recognize "four judicially created exceptions: (1) the successor expressly or impliedly assumes the predecessor's liabilities; (2) there is an actual or *de facto* consolidation or merger of the seller and the purchaser; (3) the purchasing company is a mere continuation of the seller; or (4) the transaction is entered into fraudulently to escape liability." Arevalo v. Saginaw Mach. Sys., Inc., 344 N.J. Super 490, 503 (App. Div. 2001) (citing Lefever v. K.P. Hovnanian Enters., 160 N.J. 307, 310 (1999)); see Shapolsky v. Brewton, 56 S.W.3d 120, 137 n.9 (Tex. App. 2001).

In the absence of affirmative evidence to the contrary, it appears that Fixture Perfect, Inc. is

---

[3] The "single business entity" approach is similar. Factors to be considered in determining whether entities operate as a single business enterprise include: (1) common employees; (2) common offices; (3) centralized accounting; (4) payment of wages by one corporation to another corporation's employees; (5) common business name; (6) services rendered by the employees of one corporation on behalf of another corporation; (7) undocumented transfers of funds between corporations; and (8) unclear allocation of profits and losses between corporations. Hoffman v. Dandurand, 180 S.W.3d 340, 348 (Tex. App. Div. 2005).

an alter ego of Fixture Perfect International, Inc. Further, although it may be a misnomer, it appears that Fixture Perfect Installation, Inc. was intended to refer Fixture Perfect, Inc. and, in the absence of requirement mandating rigid compliance with Fed. R. Civ. P. 4(m) for service of process concerning arbitral proceedings, the Court will treat the misnomer as referring to Fixture Perfect, Inc. Therefore, the Court concludes that Fixture Perfect, Inc. is the predecessor to successor Davaco, Inc. Given that Davaco, Inc. is the product of a cosmetic name change, it is implicit that Davaco, Inc. is subject to the liabilities of its predecessor. Therefore, Davaco, Inc. is contractually bound by any agreement of Fixture Perfect, Inc. that was not otherwise lawfully terminated.

      C.      Award

As a general rule, once an arbitrator renders a decision regarding the issues submitted, it becomes *functus officio* and lacks any power to re-examine that decision. Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F. 2d 327, 329-30 *(*3d Cir. 1991*)*. The Third Circuit Court of Appeals has applied the *functus officio* doctrine in reviewing labor arbitration, but has recognized the following exceptions: "(1) an arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for subsequent determination; and (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify." The *functus officio* doctrine exceptions are narrowly drawn in order to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award. Teamsters Local 312 v. Matlack, Inc, 118 F.3d 985, 991-992 (3d Cir. 1997). Whether a case falls

within one of the categories must be considered in light of the underlying rationale for the modern application of *functus officio*. Id.

Although Respondent disputes Arbitrator Pierson's substantive arbitral jurisdiction, Respondent does not raise an argument seeking to compel re-examination of the arbitral decision itself. In accordance with the CBA, that decision is final and binding.

**IV.   CONCLUSION**

For the reasons stated, the motion to confirm the arbitration award is **granted** and the cross-motion to vacate the arbitration award is **denied.**

 S/ Dennis M. Cavanaugh
 Dennis M. Cavanaugh, U.S.D.J.

Date:         March   29  , 2010
Orig.:        Clerk
cc:           All Counsel of Record
              File